# RICHARDSON *v.* EMERY & a.

To prove a claim for wood sold, the plaintiff offered in evidence a small memorandum book, apparently carried in the pocket, consisting of ten leaves, and containing sundry minutes, some in pencil and some in ink, of money received and paid, of which character were all the charges, excepting that against the defendants. *Held*, that it could not be presumed that the plaintiffs' business was so exclusively of this description: and that the book was inadmissible.

The plaintiff testified that he was engaged in buying lots of wood and selling them out again, and that he kept different books for different lots of wood, and that a book, which he produced, relating to one of the lots, contained a charge for wood against the defendants. *Held*, that the book could not be presumed to be the daily minutes of the plaintiff's business, and was inadmissable.

Charges upon a book should be precise and definite, and where a charge upon a book for wood sold, did not state whether it came from a lot owned by the plaintiff alone, or from one which he testified he owned jointly with another person, it was held to be inadmissable in evidence.

ASSUMPSIT on an account annexed to the writ. The account was charged as follows:

Joseph P. Emery and Ebenezer Farnum,

to William Richardson, Dr.

1848, April 14 — To 45 cords and 5 feet of wood at $2.12½

per cord, ....................... $96.95

To interest, ..................... 1.50

$98.45

Farnum was defaulted, and the question was whether the wood was sold to Emery & Farnum, or to Farnum alone. The plaintiff stated his case to be that he sold the defendants one hundred and fifty cords of woods, which lay in a large pile; that the defendants took forty-five cords and five feet of it, and in a subsequent arrangement the plaintiff took back the residue. The action was brought for the forty-five cords and five feet.

To prove the sale of the wood to the defendants, as charged in the account, the plaintiff offered his book of accounts and his own oath. The book produced was a small memorandum book, apparently carried in the pocket, consisting of ten leaves, and contained sundry minutes, some in pencil and some in ink, of money paid out and money received. It also contained an account headed "Wood with Sawyer & Robinson," purporting to be an account of money received from and paid to sundry persons. But, except the account against the defendants, there was no charge against any person that appeared to be for a debt due on account. The charge against the defendants was as follows:

"1848, April 14 — J. P. Emery & Eb'r. Farnum, bot of

W. Richardson, 150 cords Wood, $2⅛,

Aug. 8, — 45 cords and 5 feet, taken by Emery

& Farnum, ................. $96.95."

The plaintiff testified that he was engaged in buying lots of wood and selling them out again; that in some of this business he was in partnership with Mr. Sawyer, and that he did a small business on his own account; that he kept different books, like that produced, for different lots of wood; that this book contained an account of the wood sold the defendants, and of the Colt lot, bought by him and Sawyer; that he kept a separate

memorandum book for each lot of wood; that these different books taken together would contain a history of his business. He offered to produce all these books, and also a book into which he said these accounts were carried in August, 1848. There was nothing in the book that showed of whom the plaintiff had the wood charged to the defendants, or to what lot it belonged.

The jury found a verdict for the defendant, Emery, which the plaintiff move to set aside for the ruling of the court rejecting his book.

*G. M. Flanders* and *W. C. Clark*, for the plaintiff.

1. The plaintiff's book was *competent* evidence.

*Cogswell* v. *Doliver*, 2 Mass., 217; *Cummings* v. *Nichols*, 13 N. H. Rep., 420; *Eastman* v. *Moulton*, 3 N. H. Rep., 156; *Pierce* v. *Smith*, 4 Mass., 455; *Bell* v. *McLean*, 3 Verm. Rep., 185; *Jones* v. *Dikay*, 2 Penn., 955; 1 U. S. Digest, 56, art. 217; *Taylor* v. *Tucker*, 1 Kelley, 231; 1 U. S. Annual Digest, 231, art. 130; *Rowland* v. *Burton*, 2 Harrington, 288; 1 U. S. Supplement, page 32, art. 72.

In *Cummings* v. *Nichols*, 13 N. H. Rep., 425, Chief Justice *Parker* says: "There is no particular form in which the book of a party must be kept, in order to its *admission* as evidence, in support of his account."

In *Cogswell* v. *Doliver*, the case finds that—"to prove the set-off, the defendant offered two small memorandum books, which were not kept in the form of a day or waste book, to be supported by his oath; which books contained the items of the said account filed, which were entered therein, intermixed with various charges, notes, receipts and memorandums relating to the defendant's dealings with other persons, alike irregular, in whatever blank spaces Dolliver happened to find, without any regard to order of dates or pages," and those small memorandum books were held to be competent evidence.

" In Vermont, an entry of a service as a counsellor at law, on a separate slip of paper, filed according to the party's usual practice, was received. 2 Phillips on Evidence, 697, (Cowen & Hill's Notes.)

Richardson *v.* Emery.

" That the books of account, offered in evidence, are of a suspicious cast, some leaves cut out and the account kept ledgerwise, will not prevent its being given in evidence. Its credit is to be determined by the jury." 1 U. S. Digest, 56, art. 217.

" Where original entries are made on separate sheets of paper, and not in a book, they are admissible as books of original entry, although attached to the writ as a bill of particulars." 1 U. S. Annual Digest, 231, art. 130.

" A notched stick was admitted in evidence, with the oath of the party, as a good book of original entries." 1 U. S. Digest, Supplement, p. 32, art. 72.

*Morrison & Fitch*, for the defendants.

GILCHRIST, C. J. The ruling of the court, in this case, rejecting the book was correct. There is no principle on which such extremely loose papers as those offered by the plaintiff are admissible in evidence, as a book of accounts. They do not possess that intrinsic evidence of their truth, without which the admission of account books is extremely dangerous to the cause of justice.

In the first place, the charges in the hand-writing of the party, must appear in such a state that they may be presumed to have been his daily minutes of his transactions and business. *Eastman* v. *Moulton*, 3 N. H. Rep., 156. The papers offered to substantiate this claim are confessedly not such minutes. The plaintiff was engaged in buying and selling lots of wood, and he kept different books for the different lots. He did not keep one book of original entries on which his daily charges were made, so as to afford some security against interpolations, but the matters relating to each transaction were separately recorded. It would be much easier to manufacture a book containing the plaintiff's statement of a single transaction, than a regular account book containing the minutes of his business from day to day.

The charges, with the single exception of that against the defendants, purport to be only for money received and for money

paid. This does not accord with our experience of the nature of the daily transactions between man and man. Ordinary business does not consist so exclusively of such subjects, and this is a matter proper to be considered in connexion with others, in determining whether the book can be considered a daily record of business transactions. We cannot presume that the business of the plaintiff was so entirely of this character.

The evidence furnished by the memoranda, is likewise uncertain. The plaintiff and Sawyer owned the Colt lot together. It does not appear whether this wood did, or did not, come from the Colt lot, and whether the plaintiff owned it alone, or with Sawyer. If the plaintiff should recover, on the evidence furnished by these charges, and if the wood should have come from the Colt lot, and Sawyer should be entitled to a share of the proceeds of it, the defendant might be called on to pay again for what he had already paid; a result which, of course, should be avoided if practicable.

The case of *Cogswell* v. *Dolliver*, 2 Mass., 217, by no means comes up to the standard established by *Eastman* v. *Moulton*, and since invariably recognized as authority by this court. In the case in Massachusetts, *Sewall*, *J.*, holds that the objections to the competency of a book are of two kinds only: one, that it does not contain the first entries by the party, made at or near the time of the transactions to be proved, the other, that it presents fraudulent appearances. *Sedgwick*, *J.*, says that a book " ought to appear suited to aid the oath of the party which it is brought to fortify and confirm." This is different from the doctrine of this court. In the case of *Little* v. *Wyatt*, 14 N. H. Rep., 26, it is said " it is the book which is the evidence, and the party testifies in chief only to verify it. The party is not a witness who testifies to facts, and then appeals to his book in corroboration of his story, but the book is the source of information." *Sedgwick*, *J.*, also held that the determination of the court, before whom the case is tried, that the book is proper to be admitted, renders it competent evidence. Undoubtedly the practice has been very lax on this point, and numerous decisions are to be found in the reports in this country irrecon-

cilable with any principle. In *Curren* v. *Crawford*, 4 S. & R., 3, the words and figures "II 15 B. Marpal, 60, Thermity Coren," were admitted as evidence of a charge of lime, and in *Prince* v. *Smith*, 4 Mass., 455, it is held that regard may be had to the degree of education of a party. We have before had occasion to comment on these singular decisions; *Woodes* v. *Dennett*, 12 N. H. Rep., 512; and the explanation of them, as was then said, is to be found in the fact that the great cheapness and convenience of this mode of proof had insensibly introduced a laxity in the practice, which the courts in question found it difficult to limit to the cases for which such evidence was originally designed.

We have already held that there is no particular form in which the account book of a party must be kept; *Cummings* v. *Nichols*, 13 N. H. Rep., 420; and we are desirous of adapting the rule regulating the admission of it to the practical business of life, so far as that may be done without violating the principle that a party shall not be a witness in chief in his own case.

*Judgment for the defendant.*